# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**S.S.,**

        **Plaintiff,**

**v.**                                                    **Case No: 6:11-cv-1145-Orl-31GJK**

**PRINCETON HOUSE CHARTER SCHOOL, INC.,**

        **Defendant.**

## ORDER

This cause comes before the Court on a Motion for Summary Judgment (Doc. 36) filed by Defendant Princeton House Charter School, Inc. ("PHCS"); a Response (Doc. 47) filed by Plaintiff S.S., a Reply (Doc. 50), and a Sur-Reply (Doc. 55). For the reasons discussed below, the Court will grant summary judgment in favor of PHCS with respect to Count I, and dismiss Count II without prejudice.

**I.      Background**

S.S. is a six-year old child with non-verbal autism who was enrolled as a student at PHCS, a public charter school in Orange County, Florida. Although Plaintiff complains of several 'incidents' that occurred while she attended the school, only two arguably support a cause of action. The first occurred in November 2010, when two employees of PHCS instructed several students to crawl through a translucent "fabric tunnel." (Doc. 1, ¶ 33). Prior to entering the tunnel, S.S. began to exhibit signs of distress by "screaming and crying." In apparent disregard for her protestations, PHCS employees physically "pushed" S.S. into the tunnel and closed one end. S.S.

panicked, crying and screaming as she tried to escape the tunnel. It is not clear exactly how long S.S. was in the tunnel—likely no more than two or three minutes at most—but upon exiting she was visibly upset. PHCS employees then physically dragged S.S. over to a trampoline and "sort-of jumped her up and down on the trampoline as she continued her tantrum." (C.S. Deposition, 19:9-20:18).

The next incident occurred in January 2011. Although the specific facts are somewhat in dispute, it is clear that S.S. was sitting in a chair watching a movie along with the rest of her class. S.S. got out of her seat and walked towards the wall (a few feet away) on at least three occasions.[1] A video of the incident, filed under seal, appears to depict two PHCS staff members grabbing S.S. by the shoulders and dragging her back to her seat. Thereafter, one staff member lifted up the back of S.S.'s sweater and placed it over the back of the chair.[2] S.S. struggled for five to ten minutes before ultimately escaping. The video fails to depict a similar incident which occurred just prior. In that incident, the same PHCS employee threw S.S. into the chair, causing it to tip over and land on top of her, causing a small red mark on her lower back. (Doc. 1, ¶¶ 52-53). Plaintiff claims that as a result of these events, S.S. suffered severe psychological trauma and bruises on the neck and body.

On July 11, 2011, Plaintiff filed this suit asserting two claims, a Fourteenth Amendment substantive due process claim pursuant to 42 U.S.C. § 1983 (Count I), and "negligent hiring, training, retention and/or supervision" (Count II). Defendant now moves for summary judgment on Count I, and for the dismissal of Count II.

---

[1] A video of the event filed under seal shows one such occasion, other evidence—taken in a light most favorable to the Plaintiff—suggests it may have occurred multiple times.

[2] It also appears that the staff member held onto the back of the sweater, thus preventing S.S. from getting out of the chair.

## II.     Legal Standards

*A.  Summary Judgment*

A party is entitled to summary judgment when it can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Servs., Inc.*, 252 F. Supp. 2d 1347, 1351-52 (M.D. Fla. 2003). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324-25 (internal quotations and citations omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no

probative value") (citations omitted); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

### B. Substantive Due Process

The Due Process Clause protects individuals against arbitrary exercises of government power, but "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.' " *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46, 118 S.Ct. 1708, 1716, 140 L.Ed.2d 1043 (1998) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129, 112 S.Ct. 1061, 1071, 117 L.Ed.2d 261 (1992)). To be arbitrary in the constitutional sense, an executive abuse of power must "shock[ ] the conscience." *Id.* at 846, 118 S.Ct. at 1717. "[T]he constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability." *Id.* at 848, 118 S.Ct. at 1717. The Due Process Clause does not "impos[e] liability whenever someone cloaked with state authority causes harm." *Id.* "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849, 118 S.Ct. at 1718.

Both the Eleventh Circuit and the Supreme Court have "said repeatedly that the Fourteenth Amendment is not a 'font of tort law' that can be used, through section 1983, to convert state tort claims into federal causes of action." *Neal ex rel. Neal v. Fulton County Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir.2000); *see also Lewis*, 523 U.S. at 848, 118 S.Ct. at 1718. Nevertheless, "excessive corporal punishment, at least where not administered in conformity with a valid school policy authorizing corporal punishment . . . may be actionable under the Due Process Clause when it is tantamount to arbitrary, egregious, and conscience-shocking behavior." *Neal*, 229 F.3d at 1075. *T.W. ex rel. Wilson v. Sch. Bd. of Seminole County, Fla.*, 610 F.3d 588, 598 (11th Cir.

2010). To determine whether a particular instance of corporal punishment is "conscience-shocking," a plaintiff must establish that, "(1) a school official intentionally used an amount of force that was obviously excessive under the circumstances, and (2) the force used presented a reasonably foreseeable risk of serious bodily injury." *Neal*, 229 F.3d at 1075. In determining whether the amount of force used is obviously excessive, a court must consider the totality of the circumstances, "[i]n particular, (1) the need for the application of corporal punishment, (2) the relationship between the need and amount of punishment administered, and (3) the extent of the injury inflicted." *Id*.

### III.   Discussion

The dispositive issue in this case is whether the acts complained of are sufficiently egregious to support a cause of action under § 1983. Although Plaintiff cites to several incidents of misconduct, only two that arguably support a 1983 action;[3] each will be addressed in turn.

*A.  The "Tunnel Incident"*

As a threshold matter, the parties agree (for the purposes of this Motion) that the "tunnel incident" did not constitute corporal punishment. Accordingly, a different analysis applies to this incident than to the "chair incident"--which was corporal punishment. *Neal*, 229 F.3d at 1072. The Eleventh Circuit has not yet articulated a standard that applies when a school official's use of force does not constitute corporal punishment. *T.W. ex rel. Wilson*, 610 F.3d at 599. It has said, however, that "a range of teacher conduct exists that is neither corporal punishment nor so conscience-shocking as to trigger a substantive due process violation," *Id*. (quoting *Peterson v. Baker*, 504 F.3d 1331, 1337 n. 4 (11th Cir.2007)). This incident falls squarely within that category. *See T.W. ex rel. Wilson*, 610 F.3d at 599; *Neal*, 229 F.3d at 1075.

---

[3] Plaintiff's arguments focus solely on these two incidents.

*B. The "Chair Incident"*

In contrast to the "tunnel incident," the parties agree that the "chair incident" constitutes corporal punishment.[4] Thus, Plaintiff must first establish that a school official intentionally used an amount of force that was obviously excessive under the circumstances. The Court must consider the totality of the circumstances to determine whether an act was "obviously excessive" including (1) the need for the application of corporal punishment, (2) the relationship between the need and amount of punishment administered, and (3) the extent of the injury inflicted." *Neal*, 229 F.3d at 1075.[5]

Turning to the first *Neal* factor, there was at least some need for punishment in this case because S.S. was being disruptive and disobedient. The class was watching a video when the incident occurred, and S.S. got out of her chair on at least three occasions. Using force to drag S.S. back to her chair is at least "capable of being construed as an attempt to restore order, maintain discipline, or protect [S.S.] from self-injurious behavior." *T.W. ex rel. Wilson*, 610 F.3d at 600.

With regard to the second factor, a fair balancing of the need for punishment and the amount of punishment administered suggests that, at most, pushing S.S. into her chair and

---

[4] The relevant question is whether an act is "capable of being construed as an attempt to serve pedagogical objectives." *T.W. ex rel. Wilson*, 610 F.3d at 600 (11th Cir. 2010) (citation omitted).

[5] The parties spend significant time discussing the "Garrett" cases—named for the teacher/defendant who allegedly abused a number of autistic students. *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty., Fla.*, 610 F.3d 588, 598 (11th Cir. 2010); *J.V. v. Seminole Cnty. Sch. Bd.*, No. 6:01-cv-1889-Orl-28JGG, 2007 WL 7261470 (M.D. Fla. March 21, 2007); *J.A. ex rel. Abelove v. Seminole Cnty. Sch. Bd.,* No. 6:05–cv–975 (M.D. Fla. filed June 30, 2005); *A.B. ex rel. Baez v. Seminole Cnty. Sch. Bd.,* No. 6:05–cv–802 (M.D. Fla. filed May 27, 2005). These cases are similar to this one in that, the plaintiffs were all autistic. They are distinguishable, however, because the use of force in the Garrett cases was more severe and consistent. Although Plaintiff attempts to draw comparison to *J.V.* and *A.B.*, where this Court denied summary judgment for defendants, the Eleventh Circuit decided *T.W.* in the years since the Garrett cases were decided by this Court. Consequently, *T.W.* is more relevant to the instant analysis.

restraining her was inappropriate, but not "conscience-shocking." S.S. was dragged back to her chair at least three times, and restrained for a few minutes. Force was used only to the extent necessary to put her back into her seat, and to keep her there for a short time. It is questionable, given S.S.'s disability, what other forms of discipline were available. While a severe disability can render certain forms of punishment more egregious, it can also increase the need for physical intervention, particularly when the child does not respond to verbal instructions. That appears to have been the case here. S.S. did not respond to verbal instructions, so the PHCS employees dragged her back to the chair. Even considering S.S.'s passive demeanor and that she is non-verbal, the severity of punishment here does not obviously outweigh the need.

Plaintiff emphasizes both the restraint (by sweater) and evidence that, on one occasion, S.S was pushed into the chair so hard that it tipped over on top of her. These acts are probably the most egregious, but still not enough to establish a constitutional injury. S.S. was struggling at the time, so it is not surprising that the chair tipped over when she was pushed onto it. More importantly, however, there is no evidence that this caused anything more than minor bruises. Placing her sweater over the back of the chair was also inappropriate, but it is probably the least forceful method of restraint that could have been used and certainly less force than used in similar cases. *See T.W. ex rel. Wilson*, 610 F.3d at 595. At most, the employees were negligent and caused some minor injuries, but this is not the type of egregious, conscience-shocking behavior required to establish a cause of action under Section 1983.

With respect to the final *Neal* factor, the extent of the physical injury inflicted in this case is not severe—bruises on the neck and lower back.[6] By comparison, in *T.W.*, an autistic student was physically restrained on multiple occasions by twisting his arms, pinning him to the ground,

---

[6] "Though the 'extent and nature of the injury' is only one factor in our analysis, it is an important factor." *T.W.*, 610 F.3d at 601 (citing *Neal*, 229 F.3d at 1076).

and bending his thumb back (by a teacher who stood nearly six feet tall and weighed about 300 pounds)—causing multiple bruises and psychological trauma. This conduct was rendered more egregious because the teacher constantly abused and verbally berated her students, so much so, that even other teachers noted the tense, hostile environment she created in the classroom. *See T.W.*, 610 F.3d at 608 (Barkett, J., dissenting). Despite the apparent severity of this conduct, the Eleventh Circuit affirmed summary judgment in favor of the defendant.[7]

Acknowledging this comparison, Plaintiff relies most on the psychological and emotional impact and S.S.'s severe disability. (Doc. 47 at 8)(citing *J.V. v. Seminole County Sch. Bd.*, No. 6:04-cv-1889-ORL-28JGG, 2007 WL 7261470 at *9 (M.D. Fla. March 21, 2007) (". . . because J.V. is developmentally disabled, the degree of injury required to constitute a constitutional deprivation is less and the use of unnecessary and excessive force is particularly malicious.")). Evidence suggests that prior to this incident, S.S. was not identified as having behavioral problems. She was described as a "generally happy kid" and not aggressive. (Doc. 47 at 10). After the incidents described above, however, S.S. had more frequent and severe tantrums, including such behavior as banging her head with her hands, pushing her fingers in her eye, and slapping herself. (Doc. 47 at 24). Additionally, Plaintiff cites to the affidavit of a physician who opines that S.S. will suffer long term psychological and emotional consequences, including the mistrust of school environments or adults in general. (*See* Doc. 47 at 25).

---

[7] *See also Peterson*, 504 F.3d at 1334-35, 1337 (choking a student until he lost his breath and sustained blue and red bruises and a scratch on his neck was not obviously excessive because "the extent of the student's bodily injury was not serious."). By contrast, hitting a student in the eye with a metal weight lock, permanently destroying the eye, was obviously excessive, *Neal*, 229 F.3d at 1076, as was striking a student with a metal cane on the head, ribs, and back with sufficient force to cause a large knot and continuing migraine headaches, *Kirkland ex rel. Jones v. Greene County Bd. of Educ.*, 347 F.3d 903, 904 (11th Cir.2003).

As troubling as psychological injuries can be, however, courts rarely find a psychological injury sufficient to meet § 1983's high threshold.[8] As noted by the Eleventh Circuit in *T.W. ex rel. Wilson*,

> [w]e are mindful that students like T.W., who suffer from severe developmental disabilities, are particularly vulnerable to psychological harm, and that psychological injuries can be as traumatic, if not more traumatic, than physical injuries. It is clear that "[p]laintiffs have not fared well where psychological damage forms either the sole basis of or is an element of the plaintiff's substantive due process claim," *Dockery v. Barnett*, 167 F. Supp. 2d 597, 603 (S.D.N.Y. 2001), but we can imagine a case where an exercise of corporal punishment-even one that causes only psychological injury-"might be so severe that it would amount to torture equal to or greater than the stomach pumping abuse condemned in *Rochin*," *Abeyta ex rel. Martinez v. Chama Valley Indep. Sch. Dist.*, 77 F.3d 1253, 1258 (10th Cir. 1996); *see also Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

*T.W. ex rel. Wilson v. Sch. Bd. of Seminole County, Fla.*, 610 F.3d 588, 601-02 (11th Cir. 2010). The court went on to affirm summary judgment for defendant because the conduct at issue "was not so arbitrary and egregious as to support a complaint of a violation of substantive due process" considering the totality of the circumstances, including both the physical and psychological damages—and the plaintiff's disability. *Id.* at 602.

In this case, the physical injuries suffered by S.S. are minor, while the psychological injuries are, at most, equal to that of the plaintiff in *T.W.* Of course, none of this is meant to suggest that the use of force against a vulnerable student is acceptable, but in light of *T.W.*, no reasonable jury could conclude that PHCS's use of force was obviously excessive in the

---

[8] *See Abeyta ex rel. Martinez v. Chama Valley Indep. Sch. Dist.,* 77 F.3d 1253, 1256 (10th Cir. 1996); *Brown ex rel. Brown v. Ramsey,* 121 F. Supp. 2d 911, 923 (E.D.Va. 2000); *see also M.M. ex rel. J.M. v. Tredyffrin/Easttown Sch. Dist.,* No. 06-1966, 2006 WL 2561242, at *13 (E.D. Pa. Sept.1, 2006); *S.M. ex rel. L.G. v. Lakeland Sch. Dist.,* 148 F. Supp. 2d 542, 547-48 (M.D. Pa. 2001).

constitutional sense. *Id*. (citing *Peterson*, 504 F.3d at 1336-38).[9] Because the use of force was not obviously excessive, it is not necessary to consider whether the force used presented a reasonably foreseeable risk of serious bodily injury. *Peterson*, 504 F.3d at 1338 n. 6.[10]

*C. Common Law Claims*

Having disposed of S.S's federal claims, the Court declines to exercise supplemental jurisdiction over the state law claim. See 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction when claims giving rise to original jurisdiction have been dismissed). Accordingly, S.S.'s state law claim (Count II) will be dismissed without prejudice. *See T.W. ex rel. Wilson v. Sch. Bd. of Seminole County, Fla*., 607-CV-155-ORL-28GJK, 2009 WL 1140101 (M.D. Fla. Apr. 28, 2009) aff'd, 610 F.3d 588 (11th Cir. 2010).

**IV. Conclusion**

In light of the foregoing, it is hereby **ORDERED** as follows:

1. Defendant's Motion for Summary Judgment on Count I (Doc. 36) is **GRANTED**;

2. Defendant's Motion to Dismiss Count II (Doc. 36) is **GRANTED**;

3. Count II is **DISMISSED WITHOUT PREJUDICE**;

4. The Clerk is directed to enter judgment in favor of Defendant on Count I, and to thereafter, close the file.

**DONE** and **ORDERED** in Orlando, Florida on November 15, 2012.

---

[9] Plaintiff points to *J.V.*, another Garrett case, where this Court denied summary judgment for the defendant based largely on the plaintiff's disability and relative helplessness. J.V. Being a Garrett case however, the conduct at issue in J.V. was substantially more egregious than the conduct in this case. Further, that case was decided before *T.W.*

[10] The parties also argue whether PHCS can be liable for this misconduct under a theory of deliberate indifference. Having found that no constitutional violation occurred, however, it is unnecessary to reach this issue. Nor is it necessary to address the subjective intent of the PHCS teachers.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties